Our final case of the day is United States v. Singleton. Ms. Armour. Good morning. May it please the Court, Counsel. My name is Molly Armour and I represent defendant-appellant Corrie Singleton. We are here on our brief. The issue is whether the sentencing court committed procedural error by failing to consider two principal mitigating arguments for defendant-appellant. The parties agree. Your standard of review is de novo. And this is a relatively simple case. The record gives no evidence that the court below considered these two core issues. The first is a request for a downward departure based on youth. The arguments were that the guidelines were overly harsh, nearly as long as Mr. Singleton's life to date, and that the policy statements and official commentary of the then-in-place sentencing guidelines were implemented to broaden the consideration of this factor for youthful offenders. This, as the court is well-versed, deals with cognitive challenges and cognitive changes that last into the mid-20s for young people and can affect individual behavior and culpability. The second argument that was advanced was a series of deterrence arguments with regard to Mr. Singleton that the court likewise failed to consider. The first was that this was Mr. Singleton's first custodial sentence, and it is a well-recognized argument of legal merit that generally a lesser period of imprisonment is required to deter a defendant who has not previously been subject to lengthy incarceration. We also cited, too, a Sentencing Commission report that deals with criminal history Category 1 offenders, namely that they have lower rearrest rates upon release. And finally, we spent a great deal of time in both our brief and oral argument talking about the brain science and the young age, particularly the two components of those arguments were that younger offenders have an aging out that occurs, that earlier behaviors prior to their mid-20s become lesser behaviors the older they get. And the second is neuroplasticity, the fact that younger people are more capable of rehabilitation because their brains have not yet been fully formed. These were not stock or boilerplate arguments. They were specific. They were tailored to Mr. Singleton and his circumstances in the case, and they were well-developed. There was a factual basis for these arguments, and the court was required to consider these arguments and the defendant's arguments and explain to both the defendant and for the benefit of this reviewing court whether it agreed or disagreed with those arguments and how it considered them. The government contends that various aspects of the transcript somehow point to fair consideration of these issues. Obviously, we dispute that. We believe that this is clear procedural error and in ignoring principle arguments and that it isn't cured by a presumption of reasonableness given that a below-guideline sentence was, in fact, incurred here. And where there is this kind of procedural error, the remedy is resentencing and a remand. And if there's no other questions regarding this record from the court at this time, we would reserve the balance of our time for a rebuttal. Thank you. Ms. Cara. May it please the court. My name is Simer Cara, and I represent the United States. This court should affirm Mr. Singleton's sentence. The district court properly considered the defendant's principle arguments and mitigation before imposing a below-guideline sentence of 180 months. This court has previously held that a district court's consideration of primary arguments and mitigation can be implicit or imprecise, and it need not be extensive, and that the requirement that a court specifically address principle arguments and mitigation applies with less force when it receives written and oral sentencing arguments and imposes a prison sentence significantly below the guidelines range. Here, the district court acknowledged reviewing defendant's sentencing memorandum, listened to the oral presentation, and addressed defendant's principle arguments before imposing a sentence of 180 months, 39 months below the low end of the applicable guidelines range. It's clear from the totality of the record that district court not only considered defendant's principle arguments and mitigation, but accepted them, specifically stating that the guidelines range was stiffer than necessary because of the mitigation before imposing a below-guideline sentence. The district court stated that anything less than 180 months would minimize the seriousness of the offense and the harm caused by defendant's actions of robbing an armored truck courier by pointing a gun at her head, forcing her to unlock the armored truck, and fleeing with over $1 million in cash before crashing into another vehicle while attempting to evade police. In his sentencing memorandum, defendant outlined his request for a downward departure based on his young age, pursuant to guideline 5H1.1. At the outset of the sentencing hearing, the district court acknowledged that it had reviewed the pre-sentence report, the sentencing memoranda by both parties, and the supplemental materials submitted. The court also heard defendant's oral presentation. When pronouncing its sentence, the district court addressed defendant's youthfulness several times, first by addressing defendant's young age shortly after his arrest when he amassed several disciplinary violations. Reasoning that being young and thrown into this situation for the first time, coupled with the lack of more recent disciplinary violations, showed that defendant had turned a corner since his initial arrest. Then, when discussing the length of the sentence and confirming that defendant would still be a young man when he finished serving his sentence. And finally, when advising defendant of the conditions of supervised release. The district court ordered defendant to attend one session of reentry court because he would still be a young man, and observing the session would help him re-assimilate into the community, find a job, and deal with any issues he had. Defendant argued both in his sentencing memorandum and during sentencing that he was amenable to rehabilitation because of his youthfulness. The district court clearly accepted this argument when it expressed confidence that defendant would still have the future he wanted upon his release, and ordered him to observe reentry court in order to provide defendant with the tools that would set him up for success. The district court further expressed confidence in defendant's potential for rehabilitation when it told defendant that he was starting to get it, and he could look forward to a future devoted to his family, community, and neighbors. Defendant also argued during the sentencing hearing that he was influenced by his peers, which resulted in his involvement in the armed robbery, in line with the policy statement in Guideline 5H1.1 that young people are more susceptible to outside influence. The district court also accepted this argument by recognizing that defendant had never done anything like this before, and acknowledging that maybe it was because defendant was dealing with these other people. Defendant also argued in both his sentencing memorandum and at the hearing that this would be his first custodial sentence, and thus a severe sentence was not needed for specific deterrence. He was less likely to re-offend based on his lack of criminal history, and his young age at the time of the offense meant that he was more capable of rehabilitation. The district court considered each of these arguments when pronouncing its sentence. The district court specifically addressed the fact that this was defendant's first period of incarceration when addressing his disciplinary violations while in jail, stating that he was thrown into that situation for the first time and didn't handle things the way he should have. The district court also addressed defendant's lack of criminal history when acknowledging that defendant had never done anything like this before. And as mentioned previously, the district court repeatedly confirmed its belief that defendant was capable of rehabilitation, stating that defendant was starting to get it and that he could look forward to his future, that he was still a young man when released and could have the future that he wanted, and that observing re-entry court would help set him up for success and solidify his rehabilitation. It is clear from the totality of the record that the district court considered, even if somewhat imprecisely or implicitly, defendant's youth, the effect his age had on his capacity for rehabilitation, and the need for specific deterrence before imposing a below-guideline sentence. If there are no questions for the government, the government asks that the court affirm Mr. Singleton's sentence. Thank you for your time. Thank you, counsel. Anything further, Ms. Armour? Briefly, Your Honors. The government's point to these places in the record is really seeking to define the district court's intent in the sentencing. It's just not there from the plain record itself. I'll address some of the issues raised by counsel. Number one, the reference, passing reference, to the disciplinary violations sustained by Mr. Singleton when he first arrived at the county facility where he was detained in this matter. That was relating to another argument that we had raised, not an argument relating to age, but instead showing his changes that had occurred over the time that he had been in custody as a result of his maturity and grappling with the charges that he faced. There may have been a reference to age, but there was no reference to the impact or how the court put the pedals to the metal, if you were, applied that to the actual sentencing conclusions that the court reached and in conferring the sentence it did. The reference to attending a reentry court session is something that has become a relatively normal supervised release violation that many district courts confer in our district and is not particularly specific to Mr. Singleton or gives any insight into the arguments that we had raised with regard to him. These arguments are tethered, the government is tethering these statements to the defendant's arguments, but not instead to the court's discernment of those arguments. The amenability to rehabilitation that Mr. Singleton certainly has and that the court below addressed could relate to any one of a number of factors and is not specific to the ones that we raise here today relating to the request for downward departure or the various deterrence arguments that the court failed to address explicitly. This court has a well-reasoned body of opinions that tell the court that they have to give us sufficient detail to know what the basis was for the sentence that was conferred and to address principal mitigating sentencing arguments. That was not done here and a remand for resentencing is required. Thank you. Thank you, Ms. Armour. And the court appreciates your willingness to accept the appointment in this case. The case is taken under advisement and the court will be in recess.